UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOHN WOODRUFF,<br>    Plaintiff,<br><br>v.<br><br>MARK HUGHES, et al.,<br>    Defendants. | Case No. 2:22-cv-61-CLM-NAD |

## MEMORANDUM OPINION

The magistrate judge has entered a report, recommending that the court grant summary judgment for Defendants Mark Hughes, Josh Forrest, John Samaniego, and Shelby County. (Doc. 66). Plaintiff John Woodruff timely objects to several of the magistrate judge's recommendations. (Doc. 67). Defendants have filed a response to Woodruff's objections. (Doc. 68).

In his objections, Woodruff concedes that the court should grant summary judgment for Shelby County and Samaniego. (Doc. 67, pp. 1–2). Woodruff also concedes that the court should grant summary judgment for all Defendants on his personal injury claim. (*Id.*, p. 1). The court addresses Woodruff's other claims below.

### A.   Background

On December 16, 2019, Woodruff went to the Shelby County Sheriff's Office to register as a sex offender. (Doc. 38, p. 13). Instead of simply signing the required forms, Woodruff wrote comments and case cites on them, then presented them to Defendant Hughes. (Doc. 38, pp. 13–14; Doc. 46-3, p. 3; Doc. 46-5). Hughes explained that they would not accept the paperwork as revised by Woodruff and asked him to redo it. (Doc. 46-3, p. 3; Doc. 64-1, p. 9). Woodruff refused to complete the forms without his commentary, so Hughes, after conferring with his supervisor, Defendant Forrest, arrested Woodruff for failing to register. (Doc. 38, pp. 14–15; Doc. 64-1, p. 10).

Woodruff spent December 16–18 in jail. (Doc. 38, p. 20). Though initially released on bond, Woodruff was jailed again on December 23, on a probation revocation based on his arrest for failure to register. (*Id.*). On January 8, 2020, the district attorney dismissed the charges and reinstated Woodruff to probation in exchange for Woodruff signing an agreement to release the Shelby County Sheriff and all his agents and employees from civil liability. (Doc. 38, p. 20; Doc. 46-9, p. 2).

Based on these facts, Woodruff brings claims for First Amendment retaliation (doc. 38, p. 21), personal injury (*id.*, p. 24), and malicious prosecution (*id.*, p. 26). The magistrate judge has also construed Woodruff's complaint as raising First Amendment free speech and negligent supervision claims. (Doc. 66, pp. 6, 15, 17). The magistrate judge recommends the court grant Defendants summary judgment on Woodruff's claims because: (1) Shelby County isn't a proper defendant; (2) Sheriff Samaniego is immune from Woodruff's claims and the evidence doesn't support a supervisory liability claim; (3) Woodruff signed a valid release; (4) the statute of limitations bars all claims except Woodruff's malicious prosecution and retaliatory arrest claims; (5) Hughes had at least arguable probable cause to arrest Woodruff; and (6) Woodruff cannot bring a personal injury claim based on Hughes' alleged crimes. (*Id.*, pp. 8–27).

B.   Analysis

Woodruff says the court should reject the magistrate judge's recommendation for four reasons.

1. <u>Release</u>: Woodruff first objects to the recommendation that the court grant summary judgment on each claim because of the release-dismissal agreement. (Doc. 67, p. 3). Woodruff argues that the release was invalid because the county entered it for an "improper purpose." (*Id.*). According to Woodruff, the district attorney's knowledge of the criminal charges against him was unchanged between December 18, 2019, and January 8, 2020, so the purpose of seeking revocation of his probation based on his failure to register charge was "to strong-arm Plaintiff to release Defendants for an overtly illegal arrest and violation of Plaintiff's civil rights." (*Id.*).

2

Release-dismissal agreements are generally enforceable. *Newton v. Rumery*, 480 U.S. 386, 394 (1987) (upholding a release-dismissal agreement and noting that "[i]n many cases a defendant's choice to enter into a release-dismissal agreement will reflect a highly rational judgment that the certain benefits of escaping criminal prosecution exceed the speculative benefits of prevailing in a civil action"); *Newsome v. Cooper*, 333 So. 3d 940, 955–56 (Ala. 2020) (noting that Alabama law permits release-dismissal agreements). But Woodruff argues that here "no crime had been committed and thus there was no violation of the terms of probation. A reasonable inference follows that [the district attorney] petitioned for revocation solely to extract a release for the county's economic benefit." (Doc. 67, pp. 3–4). As a result, Woodruff says the district attorney had an "improper purpose" for obtaining the release, so it isn't enforceable. (*Id.*, p. 4).

Woodruff's argument conflates the roles of an arresting officer and district attorney. The validity of Hughes' arrest of Woodruff "does not . . . establish misconduct in the criminal prosecution." *See Libmen v. City of Avondale Estates*, 190 F. App'x 774, 777 (11th Cir. 2006) (holding release of civil claims against arresting officer valid and enforceable, when the prosecution offered to drop the criminal charges in exchange for the plaintiff executing a release of any civil claims he might have asserted against the arresting officer, and noting that an arresting officer's actions are not attributed to the prosecutor). No improper purpose can be attributed to the district attorney based on Hughes' actions. Nor does a district attorney seeking an arrest warrant based on violations of the terms of probation support a finding of an "improper purpose." *See Hartman v. Moore*, 547 U.S. 250, 265–66 (2006) (holding claim that prosecution was induced by official bent on retaliation requires a showing of a lack of probable cause).

As explained in the report and recommendation, Hughes had at least arguable probable cause to arrest Woodruff for refusal to complete the required ASORCNA paperwork. (Doc. 66, pp. 20–21). The existence of arguable probable cause negates any claim that the release was done for an improper purpose. So the court overrules this objection.

The court also overrules Woodruff's objection that the release is unenforceable because the district attorney obtained it by fraud. This court is

3

to consider three factors when determining whether a release-dismissal agreement is enforceable: (1) whether the release-dismissal agreement was voluntary; (2) whether there was evidence of prosecutorial misconduct; and (3) whether enforcement of the agreement would adversely affect the relevant public interests. *Newton*, 480 U.S. at 393–96. The magistrate judge considered each of these factors in his report and recommendation and correctly determined that the release-dismissal agreement wasn't coercive or involuntary. (Doc. 66, pp. 12–13). And the evidence doesn't support Woodruff's conclusory assertion that he was induced to sign the agreement under duress. Plus, as explained below, Woodruff hasn't shown that his prosecution was void because Hughes didn't sign his application for arrest warrant.

2. <u>Failure to sign warrant</u>: Woodruff says that the magistrate judge improperly found that an arrest warrant existed, arguing that Hughes' failure to sign the application warrant made this finding plain error. (Doc. 67, p. 5). But the magistrate judge merely noted the issuance of the warrant in discussing why Woodruff's claim was properly considered as one for malicious prosecution rather than false arrest.[1] (*See* Doc. 66, p. 18).

Woodruff also identifies no legal basis to hold that a warrant application is void if unsigned by the applicant, and caselaw suggests the opposite. *See, e.g.*, *United States v. Allen*, 536 F. Supp. 1250, 1256 (M.D. Ala. 2020) (holding while "officers' unrecorded sworn oral testimony in making probable cause determinations on arrest warrants" is "less than ideal because it deprives a reviewing court of any meaningful record, it is constitutionally permissible."). Nor did Woodruff challenge the validity of the arrest warrant application in his second amended complaint. (Doc. 38). He instead first brought up the fact that the warrant application was unsigned in his

---

[1] To the extent that Woodruff now argues "the reliance upon the fact that a warrant subsequently issued" means his "claims are due to be reassessed as if no warrant issued," (doc. 67, p. 5), such a finding would remove his claims from the realm of malicious prosecution and place them instead within a false arrest/false imprisonment context. But Woodruff brought a claim for malicious prosecution, not false arrest. (Doc. 38, p. 26). If Woodruff now contends he was never held by legal process, his claim for malicious prosecution necessarily fails. *See, e.g.*, *McAffee v. City of Clearwater*, 2023 WL 2823392, at *3 (11th Cir. Apr. 7, 2023). And Woodruff hasn't established a claim for false arrest either because, as explained, he hasn't shown that Hughes lacked arguable probable cause to arrest him. *See Garcia v. Casey*, 75 F.4th 1176, 1186 (11th Cir. 2023).

response in opposition to Defendants' motion for summary judgment. (Doc. 64, p. 7). And this court cannot consider allegations asserted for the first time in response to a motion for summary judgment. *See Flintock Const. Servs., LLC v. Well-Come Holdings, LLC*, 710 F.3d 1221, 1227–28 (11th Cir. 2013).

In short, Woodruff never raised the validity of the application for the arrest warrant as an independent claim.[2] That the magistrate judge noted the existence of the arrest warrant in discussing the malicious prosecution claim (*see* doc. 66, p. 18) is not error, and the court overrules this objection.

3. <u>Statute of limitations</u>: Woodruff next asserts that his First Amendment claims aren't barred by the statute of limitations. The magistrate judge assumed that Woodruff's First Amendment retaliatory arrest claim didn't accrue until the county dropped the failure to register charge, so the retaliatory arrest claim was timely filed. (*Id.*, pp. 15–16). But the magistrate judge found that Woodruff's First Amendment free speech claim was time-barred because Woodruff knew Hughes wouldn't accept his edited ASCORNA registration forms on December 16, 2019, but didn't sue Defendants until January 10, 2022. (*Id.*, pp. 14–15).

While Woodruff is correct that a malicious prosecution doesn't ripen until the termination of proceedings in the plaintiff's favor, the same does not hold true for a First Amendment free speech claim. Woodruff's reliance on *McDonough v. Smith*, 588 U.S. ---, 139 S. Ct. 2149, 2159 (2019), is misplaced. *McDonough* concerned the accrual of a claim for fabricated evidence, which the Supreme Court held follows the same favorable termination rule as malicious prosecution claims. It did not hold that "all companion civil claims stand in abeyance until the ripening of a malicious prosecution" as Woodruff claims. (Doc. 67, p. 5). On the day of his arrest, December 16, 2019, Woodruff knew that Hughes would not accept the ASCORNA forms with his commentary. And unlike Woodruff's malicious prosecution claim (and arguably his retaliatory arrest claim), Woodruff succeeding on his First

---

[2] An argument raised for the first time in an objection to a magistrate judge's report and recommendation does not require the district court to consider it. *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) ("[A] district judge has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge."). So the court needn't consider any claim Woodruff is making that the unsigned application violated his rights.

Amendment free speech claim wouldn't necessarily imply that the criminal proceedings against him were invalid. *See McDonough*, 139 S. Ct. at 2157–58. So to the extent that Woodruff believed the failure to accept the ASCORNA forms with his commentary violated his First Amendment free speech rights, he had until December 16, 2021, to sue. In sum, the First Amendment free speech claim is barred by the statute of limitations, and the court overrules Woodruff's objection.

4. Discovery: Woodruff finally appears to object to the report and recommendation because he lacked evidence of retaliation and collusion, asserting that he was denied adequate discovery. (Doc. 67, pp. 5–6). Woodruff identifies no discovery he requested, which would have helped him establish a First Amendment retaliatory arrest. (*See* Docs. 50, 55). And the magistrate judge allowed Woodruff to obtain relevant discovery.[3]

Nor did Woodruff bring a "collusion" claim. To the extent that he alleged a conspiracy between Hughes and Forrest, Woodruff brought that allegation as part of his First Amendment retaliatory arrest claim, and not as an independent cause of action. (*See* Doc. 38, p. 23). Even if Woodruff had brought such a claim, it would be barred by the intracorporate conspiracy doctrine. *See Grider v. City of Auburn*, 618 F.3d 1240, 1261–62 (11th Cir. 2010) (holding a corporation's employees, acting as agents of the corporation, cannot conspire among themselves or with the corporation). This doctrine extends to § 1983 claims against law enforcement officers in their individual capacities. *See id*. So the court overrules Woodruff's discovery-related objections.

---

[3] Woodruff alleges that, despite placing in evidence his transcriptions of his audio recording of his arrest, "the naked transcriptions do not tell the full story …. [W]ell-crafted interrogatories to Defendants Hughes and Forrest would have broadly expanded the signification And without at least interrogatories, the Report and Recommendation was unable to assess the genuineness of disputes because Defendants were not made to explain Defendant Hughes's words in the audio recording." (Doc. 67, p. 6). On October 19, 2023, the magistrate judge entered a detailed order allowing in part and denying in part Woodruff's discovery motion. (*See* doc. 55). The problem for Woodruff was that most of the discovery he sought was irrelevant, inadmissible, or inappropriate.

—

In summary, having reviewed and considered de novo all the materials in the court file, including the objections and the report and recommendation, the court **OVERRULES** Woodruff's objections, **ADOPTS** the magistrate judge's report, and **ACCEPTS** the recommendation. Consistent with that recommendation, the court will **GRANT** Defendants Mark Hughes, Josh Forrest, John Samaniego, and Shelby County's motion for summary judgment (doc. 46) and dismiss Woodruff's claims against them.

The court will enter a separate final judgment that carries out this ruling and closes this case.

**Done** on February 28, 2024.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE